**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny Gonzales, Jr., | No. CV-24-01089-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of his applications for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 12), the Commissioner's answering brief (Doc. 18), and Plaintiff's reply (Doc. 21), as well as the Administrative Record (Docs. 8-9, "AR"), and now reverses the Administrative Law Judge's ("ALJ") decision and remands for further proceedings.

I.  Procedural History

Plaintiff filed applications for benefits on August 16, 2021, in each case alleging disability beginning on June 1, 2020. (AR at 15.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels. (*Id.*) On August 23, 2023, following a telephonic hearing, the ALJ issued an unfavorable decision. (*Id.* at 15-26.) The Appeals Council later denied review. (*Id.* at 1-3.)

…

…

II.   The Sequential Evaluation Process and Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id*. § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id*. § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.   The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "obesity with severe obstructive sleep apnea and seizure disorder." (AR at 17-18.)[1] Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id*. at 18-19.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: frequent climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, and avoid all exposure to hazards such as unprotected heights and heavy machinery.

(*Id.* at 19.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 21.)

The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) Nathan Strause, M.D., state agency reviewing physician ("persuasive"); (2) Mark Kuge, M.D., state agency reviewing physician ("more persuasive"); and (3) Hemant Pandey, M.D., treatment provider ("not persuasive"). (*Id.* at 23-24.) The ALJ also clarified that "any third-party function reports have been reviewed, considered, and measured against the record evidence as a whole." (*Id.* at 24.)

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff was unable to perform his past relevant work as a garage supervisor or diesel mechanic, he was capable of performing three jobs that exist in significant numbers in the national economy: (1) fast food worker, (2) cashier II, and (3) cafeteria attendant. (*Id.* at 24-25.) Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 26.)

---

[1]   The ALJ also determined that Plaintiff had the non-severe impairments of cardiovascular conditions and status post COVID infection. (AR at 18.)

IV. Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ erred at step three by determining that his seizure disorder did not meet or equal Listing 11.02A; and (2) whether the ALJ failed to provide legally sufficient reasons for rejecting his symptom testimony. (Doc. 12 at 5-15.) As a remedy, Plaintiff seeks a "remand for further proceedings." (*Id.* at 15.)

A. **The ALJ's Step-Three Analysis**

1. Legal Standard

At step three of the sequential evaluation, a claimant can establish disability if he shows that his impairment meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). "Listed impairments are purposefully set a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citation omitted). The mere diagnosis of a listed impairment "is not sufficient to sustain a finding of disability." *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990). Rather, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted). It is the claimant's burden to prove his impairment meets the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

2. The ALJ's Analysis

Listing 11.02 is entitled "Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D." Listing 11.02(A), the provision at issue here, provides: "Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)." 20 C.F.R. Part 404, Subpt. P, App. 1, § 11.02(A). The final cross-referenced provision, Listing 11.00(C), further provides:

> How do we consider adherence to prescribed treatment in neurological disorders? In 11.02 (Epilepsy) . . . , we require that limitations from these neurological disorders exist despite adherence to prescribed treatment. "Despite adherence to prescribed treatment" means that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment. You may receive your treatment at a health care facility that you visit regularly, even if you do not see the same physician on each visit.

20 C.F.R. Part 404, Subpt. P, App. 1, § 11.00(C).

In the underlying decision, the ALJ emphasized that Listing 11.02(A) includes the requirement that the seizures occurred "despite adherence to prescribed treatment" and concluded that Plaintiff did not satisfy Listing 11.02 because "[a]s discussed at length later in the decision, treatment providers consistently noted the claimant was non-compliant with anticonvulsive medications (Exhibits 1F/14, 15, 41, 43, 46, 49, 61, 62, 73, 87, 90; 4F/9, 11, 18; 12F/8, 9; 14F/30, 33, 35; 18F/4, 15, 16, 19, 20, 24, 38)." (AR at 19.)

### 3. The Parties' Arguments

Plaintiff challenges the ALJ's step-three analysis on multiple grounds. (Doc. 12 at 5-8.) First, Plaintiff disputes the ALJ's determination that he experienced only one breakthrough seizure where testing indicated he had taken his medication, arguing that "there are multiple hospitalizations following breakthrough seizures where medical evidence confirms therapeutic levels of medication." (*Id.* at 7, citing AR 347, 503, 563, 1017.) Second, Plaintiff contends that although there were several instances where emergency room staff stated that medication non-compliance was a "likely" or "possible" cause of breakthrough seizures, those statements are unworthy of credence because the emergency room staff did not examine the objective evidence—and, thus, the ALJ should not have uncritically accepted those statements as accurate. (*Id.* at 7-8.) Third, Plaintiff contends that although there were various instances in which he was observed having "subtherapeutic levels of medication," this is not necessarily proof of non-compliance, "as there are several factors that impact absorption of medication." (*Id.* at 7 n.1.) Fourth,

Plaintiff argues that his medical providers repeatedly considered other reasons for his continued seizures apart from medication noncompliance ("such as electrolyte imbalance, post-COVID sequalae, lung decompensation or obstructive sleep apnea"), which is further proof that "nonadherence was not the main or even a contributing cause for Plaintiff's continued seizures." (*Id.* at 8.) Fifth, Plaintiff argues that "because the ALJ's findings related to whether medical listing 11.02 criteria was met centered entirely around Plaintiff's alleged medication noncompliance, the analysis should have been guided by" Social Security Ruling ("SSR") 18-3p. (*Id.* at 10.)[2] According to Plaintiff, SSR 18-3p requires an assessment of (1) "whether the prescribed treatment, if followed, would be expected to restore the individual's ability to engage in SGA"; and (2) "whether the individual has good cause for not following the prescribed treatment." (*Id.* at 10-13.) Plaintiff argues both factors support his position because (1) "evidence supports the plaintiff's attending physicians were considering reasons for his continued seizure frequency other than nonadherence"; and (2) "the evidence of record contains ample evidence constituting good cause for failure to follow prescribed treatment including the cost of the medication, issues with health insurance coverage, difficulty obtaining neurology appointments, prior authorization delays from insurance company for medications, and confusion over prescribed dosage due to potential cognitive complaints." (*Id.*)

In response, the Commissioner defends the sufficiency of the ALJ's step-three analysis. (Doc. 18 at 5-9.) First, as for the ALJ's finding of medication noncompliance, the Commissioner contends that finding was supported by substantial evidence because there are many medical records reflecting admissions by Plaintiff that he did not maintain compliance with his medications. (Doc. 18 at 6.) Second, the Commissioner notes that the state agency medical consultations also found that Plaintiff did not meet Listing 11.02(A) due to medication noncompliance and emphasizes that Plaintiff does not challenge the ALJ's evaluation of those medical sources' opinions. (*Id.* at 7.) Third, as for

---

[2] Although this argument appears in the portion of Plaintiff's opening brief challenging the ALJ's evaluation of his symptom testimony, the argument, by its own terms, also challenges the ALJ's step-three analysis.

Plaintiff's argument that "subtherapeutic levels of medication" may be a result of malabsorption rather than medication noncompliance, the Commissioner argues that (1) this is an unsupported medical opinion and (2) at any rate, the medical records cited by the ALJ contain admissions by Plaintiff that he did not take his medication. (*Id.* at 7-8.) Fourth, for similar reasons, the Commissioner argues that the record supports the ALJ's finding that there was only one instance where Plaintiff had a breakthrough seizure despite maintaining compliance with his medication. (*Id.* at 8-9.) Fifth, the Commissioner argues that although providers may have considered other causes for Plaintiff's seizures apart from medication noncompliance, "this fails to detract from the substantial evidence that Plaintiff—by his own admission—did not consistently adhere to prescribed treatment, and therefore cannot meet the criteria of the listing." (*Id.* at 9.) Sixth, the Commissioner contends that SSR 18-3p was inapplicable because it only applies when an ALJ makes "a finding that the claimant 'would otherwise be entitled to benefits based on disability' but for failing to comply with prescribed treatment" and the ALJ made no such finding here. (*Id.* at 15-16.) At any rate, the Commissioner contends that although "Plaintiff offers multiple reasons as to why he did not comply with his prescribed treatment, including cost and insurance coverage issues and confusion over dosage . . . , these are isolated instances that fail to detract from the consistent pattern of noncompliance throughout the record." (*Id.* at 14.) Likewise, the Commissioner contends that although Plaintiff identifies "cognitive difficulty" as an explanation for his noncompliance, "Plaintiff consistently had unremarkable mental status examinations, undermining any claim of cognitive difficulty." (*Id.* at 14-15.)

In reply, Plaintiff reiterates his contention that he experienced more than one breakthrough seizure while maintaining medication compliance (Doc. 21 at 1-2); accuses the Commissioner of failing to respond to his earlier argument about providers' consideration of other reasons for his seizures apart from medication noncompliance (*id.* at 2); argues that the ALJ's "misrepresentation of the evidence . . . constitutes harmful, reversible error" (*id.* at 2-3); argues that SSR 18-3p was applicable, even though the ALJ

did not explicitly state that he would have been found disabled but for his medication noncompliance, because the ALJ found at step three that he would have met Listing 11.02(A) but for his noncompliance (*id.* at 3); and contends that the Commissioner's arguments regarding whether he had good cause for failing to take his prescribed medication are both improper (because the ALJ never addressed the issue) and factually unsupported (*id.* at 4).

### 4. Analysis

As noted, one of the requirements under Listing 11.02(A) is that the claimant experienced seizures "despite adherence to prescribed treatment," a phrase that is further defined in Listing 11.00(C) as meaning "that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment."

On the one hand, there is ample evidence in the record that Plaintiff did not maintain "adherence to prescribed treatment." Plaintiff acknowledges in his opening brief that "some evidence supports he may have not been entirely adherent to such medication" (Doc. 12 at 10) and the medical records cited by the ALJ include multiple admissions by Plaintiff of noncompliance. For example:

• The medical record from Plaintiff's neurological evaluation on April 22, 2020 includes the following: "[Plaintiff] was supposed to take 1000 mg b.i.d.; however, he did not take his medication today." (AR at 816.)

• The medical record from Plaintiff's trip to the emergency room on December 27, 2020 following a seizure includes the following: "Presents with seizure. The onset was just prior to arrival. . . . Patient reports 'is very possible I may have missed some doses.'" (AR at 415.)

• The medical record from Plaintiff's trip to the emergency room on February 8, 2021 following a seizure includes the following: "Chief Complaint[:] had seizure witnessed by family and had missed seizure medication dose." (AR at 401.)

• The medical record from Plaintiff's trip to the emergency room on April 27, 2021 following a seizure includes the following: "Presents with seizure. The onset was just prior to arrival. . . . The exacerbating factor is missed medication (per EMS the patient has missed his keppra)." (AR at 389.)

• The medical record from Plaintiff's neurological consultation on June 8, 2021 includes the following: "Per ED report patient's mother endorses unclear Keppra medication compliance . . . ." (AR at 369.)

• The medical record from Plaintiff's trip to the emergency room on October 12, 2021 following a seizure includes the following: "The patient reports he has missed several doses of Keppra this week." (AR at 342.)

• The medical record from Plaintiff's trip to the emergency room on October 28, 2022 following a seizure includes the following: "45yo M presents after missing his dose of keppra and had a breakthrough seizure." (AR at 929.)

• The medical record from Plaintiff's neurological consultation on May 24, 2023 includes the following: "BIBA earlier today AM after seizure at home, found unresponsive facedown by family, had bit left side of tongue, with subsequent postictal confusion, poor recall of events. Unsure if he took his night dose of Keppra. Recent ED visit was noted subtherapeutic serum Keppra levels 8.8." (AR at 991.)

On the other hand, Plaintiff contends the ALJ's step-three analysis should not have stopped at *whether* he was noncompliant with his seizure medication—instead, Plaintiff contends the ALJ was required under SSR 18-3p to go further and examine, among other things, *why* he was noncompliant. Acknowledging that this issue presents a close call—as one court has observed, "the interplay between the relevant listing (11.02) and SSR 18-3p . . . is 'legally unclear,'" *Kellilea F. v. Kijakazi*, 2022 WL 2128625, *6 (D.R.I. 2022)—the Court concludes that Plaintiff is correct.

The Commissioner contends that SSR 18-3p was inapplicable here because it only applies when a "claimant 'would otherwise be entitled to benefits based on disability' but for failing to comply with prescribed treatment" and the ALJ did not make a finding that

Plaintiff would have been found disabled but for his lack of medication compliance. (Doc. 18 at 15.) The problem with this argument is that the ALJ implicitly made such a finding. During the step-three analysis, the ALJ identified one, and only one, reason why Plaintiff did not meet or equal Listing 11.02(A)—Plaintiff's medication noncompliance. (AR at 22 ["I evaluated the claimant's seizure disorder under listing 11.02. However, the medical evidence of record does not [suffice] . . . . As discussed at length later in the decision, treatment providers consistently noted the claimant was non-compliant with anticonvulsive medications."].) The ALJ thus determined that, but for his medication noncompliance, Plaintiff would have met or equaled Listing 11.02(A)—a determination that would have, in turn, compelled a finding of disability at step three.

For related reasons, there is no merit to Plaintiff's argument that SSR 18-3p was inapplicable because the ALJ determined that "Plaintiff's failure to comply with prescribed treatment was a *factor* in the ALJ's finding of non-disability, but not the sole basis." (Doc. 18 at 15-16.) Although the Commissioner is correct that SR 18-3p is inapplicable when an ALJ merely identifies medication noncompliance as one of multiple reasons for an adverse credibility finding,[3] the sole basis identified by the ALJ for rejecting the applicability of Listing 11.02(A) at step three was Plaintiff's medication noncompliance (as opposed to a lack of credibility). As noted, this amounted to an implicit determination that Plaintiff would have been disabled but for his medication noncompliance, and the disability analysis would not have proceeded past step three if the ALJ had resolved this issue in Plaintiff's favor. In arguing otherwise, the Commissioner is effectively attempting to rewrite the ALJ's decision, by identifying additional reasons (beyond those identified by the ALJ) for the negative step-three determination. This approach is impermissible. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and

---

[3] *Molina v. Astrue*, 674 F.3d 1104, 1114 n.6 (9th Cir. 2012) ("This rule is not applicable here, because the ALJ determined that Molina was not disabled, and Molina's failure to seek treatment (to the extent the ALJ considered it at all) was merely a factor in the ALJ's credibility determination.").

factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Persuasive authority supports the conclusion that SSR 18-3p should be deemed applicable under these circumstances. *See, e.g., Kimberly A. v. O'Malley*, 2025 WL 2429034, \*4 (S.D. Tex. 2025) ("The debate largely surrounds whether the ALJ was required to apply SSR 18-3p, which specifies a framework for analyzing a claimant's failure to follow prescribed treatment when resolving a disability claim. . . . SSR 18-3p's requirements . . . can be triggered when an ALJ makes an implicit or explicit determination of noncompliance prior to step five of the analysis. If the ALJ makes such a determination, SSR 18-3p applies . . . .") (citations omitted); *Henson v. Comm'r of Soc. Sec.*, 2021 WL 8776794, \*5 (N.D. Tex. 2021) ("An analysis under SSR 18-3p typically occurs when the ALJ explicitly determines compliance or noncompliance. As noted above, this occurs either at step five of the sequential evaluation (if disability is found) or step three (if the claimant has a condition that meets or medically equals one enumerated in the Listing) . . . . If the ALJ makes such a determination, SSR 18-3p applies . . . . It is the substance of the consideration—not the presence of certain magic words—that indicates an ALJ has determined noncompliance."). *See also Lanier v. Comm'r of Soc. Sec.*, 2024 WL 4206111, \*12-13 (W.D. La. 2024) ("[T]he ALJ explicitly found that Lanier had not taken her medications consistently and considered Lanier's noncompliance with prescribed treatment as part of the residual functional capacity assessment, rather than as part of the credibility assessment. . . . Accordingly, the ALJ erred in considering Lanier's failure to follow prescribed treatment . . . without following the procedural safeguards in SSR 18-3p."); *Jacob Mitchell B. v. Kijakazi*, 2022 WL 2304436, \*10 (D. Idaho 2022) ("The ALJ's repeated emphasis on Petitioner's treatment noncompliance suggests this was the true reason for the ALJ's decision to deny Petitioner disability benefits. The ALJ, however, did not follow the required procedure [under SSR 18-3p] for denying benefits based on a claimant's failure to follow prescribed treatment, which requires, among other things, that the ALJ consider whether the claimant has a 'good' reason for failing to follow prescribed

treatment."); *Mitchell v. Colvin*, 2013 WL 4546729, *7-8 (N.D. Tex. 2013) (acknowledging that "an ALJ is entitled to consider noncompliance when making a determination as to disability, without an analysis of [the SSR 18-3p] factors, if the noncompliance is being considered only as part of the credibility determination," but emphasizing that an ALJ must comply with SSR 18-3p when the finding of noncompliance "provides the basis for the decision that Plaintiff was not disabled") (cleaned up).

The Commissioner also seeks affirmance on the alternative ground that any error in failing to apply SSR 18-3p was harmless, because the ALJ would have determined that Plaintiff lacked good cause for his medication noncompliance. (Doc. 18 at 14-15.) But this sort of fact-bound issue must be decided in the first instance by the ALJ, not by a reviewing court. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("[W]e can affirm the agency's decision to deny benefits only on the grounds invoked by the agency.") (citation omitted); *Mitchell*, 2022 WL 2304436 at *10 (remanding where ALJ failed to apply SSR 18-3p because "[t]he Court cannot and will not attempt to fill in these gaps").

B.     **The ALJ's Evaluation Of Plaintiff's Symptom Testimony**

Given the conclusion reached in Part IV.A above, it is unnecessary to address Plaintiff's related, but distinct, challenge to the ALJ's evaluation of his symptom testimony. Regardless of the resolution of that challenge, Plaintiff is entitled to a remand for further proceedings, and Plaintiff does not seek any greater remedy (such as a remand for calculation of benefits) with respect to his symptom-testimony challenge.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **reversed** and this matter is **remanded for further proceedings**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 2nd day of September, 2025.

Dominic W. Lanza
United States District Judge